1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GLEN ALLEN MURPHY, JR.,                )        No. C 07-02299 JF (PR)
                                        )
            Plaintiff,                  )        ORDER GRANTING MOTION
                                        )        FOR SUMMARY JUDGMENT
       vs.                              )
                                        )
                                        )
T. SHELBY, et al.,                      )
                                        )
            Defendants.                 )
_____     )        (Docket No. 33)

        Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant

to 42 U.S.C. § 1983 against Salinas Valley State Prison ("SVSP") Correctional Officers,

Defendants T. Selby and J. Rodriguez.  The Court found the complaint, when liberally

construed, stated two cognizable Eighth Amendment claims: 1) Defendants failed to

protect Plaintiff from an assault by another inmate, and 2) Defendant Rodriguez used

excessive force.  Defendants filed a motion for summary judgment on the grounds that (1)

Defendants did not violate Plaintiff's Eighth Amendment rights, and (2) Defendants are

entitled to qualified immunity.  Plaintiff filed opposition to Defendant's summary

judgment motion, and Defendant filed a reply.  After reviewing the first amended

complaint and all submitted papers, the Court concludes that Defendants are entitled to

1   summary judgment and will GRANT Defendants' motion.

2

3                                   **DISCUSSION**

4   **I.    <u>Standard of Review</u>**

5          Summary judgment is proper where the pleadings, discovery and affidavits show

6   that there is 'no genuine issue as to any material fact and [that] the moving party is

7   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant

8   summary judgment "against a party who fails to make a showing sufficient to establish

9   the existence of an element essential to that party's case, and on which that party will bear

10  the burden of proof at trial . . . since a complete failure of proof concerning an essential

11  element of the nonmoving party's case necessarily renders all other facts immaterial."

12  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect

13  the outcome of the lawsuit under governing law, and a dispute about such a material fact

14  is genuine "if the evidence is such that a reasonable jury could return a verdict for the

15  nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

16         Generally, the moving party bears the initial burden of identifying those portions

17  of the record which demonstrate the absence of a genuine issue of material fact.  <u>See</u>

18  <u>Celotex Corp.</u>, 477 U.S. at 323.  Where the moving party will have the burden of proof on

19  an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could

20  find other than for the moving party.  But on an issue for which the opposing party will

21  have the burden of proof at trial, the moving party need only point out "that there is an

22  absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325.  If the evidence

23  in opposition to the motion is merely colorable, or is not significantly probative, summary

24  judgment may be granted.  <u>See</u> <u>Liberty Lobby</u>, 477 U.S. at 249-50.

25         The burden then shifts to the nonmoving party to "go beyond the pleadings and by

26  her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

27  file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Celotex</u>

28  <u>Corp.</u>, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this

1   showing, "the moving party is entitled to judgment as a matter of law." <u>Id.</u> at 323.

2          The court's function on a summary judgment motion is not to make credibility

3   determinations or weigh conflicting evidence with respect to a disputed material fact. <u>See</u>

4   <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

5   1987).  The evidence must be viewed in the light most favorable to the nonmoving party,

6   and the inferences to be drawn from the facts must be viewed in a light most favorable to

7   the nonmoving party.  <u>See id.</u> at 631.  It is not the task of the district court to scour the

8   record in search of a genuine issue of triable fact.  <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279

9   (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable

10  particularity the evidence that precludes summary judgment.  <u>Id.</u>  If the nonmoving party

11  fails to do so, the district court may grant summary judgment in favor of the moving

12  party.  <u>See id.</u>; <u>see, e.g.</u>, <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026,

13  1028-29 (9th Cir. 2001).

14  **I.     <u>Legal Claims and Analysis</u>**

15         Plaintiff claims that on January 13, 2006, Defendants Selby and Rodriguez put

16  Plaintiff into a cell with a rival gang member, inmate Bayliss, who, at Defendant

17  Rodriguez's prompting, attacked Plaintiff while he was still restrained in handcuffs.

18  (Compl. 5-6.)  Plaintiff claims that he suffered a severe concussion as a result of the

19  attack.  (<u>Id.</u> at 6.)  Plaintiff alleges that Defendant and another unknown officer sprayed

20  pepper spray into the cell, and that Defendant Rodriguez "maliciously and sadistically"

21  sprayed Plaintiff with an entire can of pepper spray directly in the face and upper body.

22  (<u>Id.</u> at 7.)  Plaintiff claims that he exited the cell when Defendant Rodriguez ordered him

23  to do so, and that Defendant Rodriguez then "maliciously and sadistically" slammed him

24  into a wall and dragged him down a flight of stairs.  (<u>Id.</u>)  Plaintiff claims that he suffered

25  inflammation, shortness of breath and temporary blindness due to the excessive use of

26  pepper spray.  (<u>Id.</u> at 8.)  The Court found Plaintiff's allegations sufficient to state

27  violations of his Eighth Amendment rights by Defendants' failure to protect him from

28  other inmates and by the use of excessive force.

1

**1.    <u>Eighth Amendment - Failure to Protect</u>**

2      The Eighth Amendment requires that prison officials take reasonable measures to

3  guarantee the safety of prisoners.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  In

4  particular, prison officials have a duty to protect prisoners from violence at the hands of

5  other prisoners.  <u>Id.</u> at 833; <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005);

6  <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250 (9th Cir. 1982); <u>Gillespie v. Civiletti</u>, 629 F.2d

7  637, 642 & n.3 (9th Cir. 1980).  The failure of prison officials to protect inmates from

8  attacks by other inmates or from dangerous conditions at the prison violates the Eighth

9  Amendment only when two requirements are met: (1) the deprivation alleged is,

10 objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately

11 indifferent to inmate safety.  <u>Farmer</u>, 511 U.S. at 834; <u>Hearns</u>, 413 F.3d at 1040-41.

12     A prisoner may state a § 1983 claim under the Eighth Amendment against prison

13 officials only where the officials acted with "deliberate indifference" to the threat of

14 serious harm or injury to an inmate by another prisoner, <u>see</u> <u>Berg</u>, 794 F.2d at 459; <u>see</u>

15 <u>also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately

16 spreading rumor that prisoner is snitch may state claim for violation of right to be

17 protected from violence while in state custody).  The official must both be aware of facts

18 from which the inference could be drawn that a substantial risk of serious harm exists,

19 and he must also draw the inference.  <u>See</u> <u>id.</u>  A prison official need not "believe to a

20 moral certainty that one inmate intends to attack another at a given place at a time certain

21 before that officer is obligated to take steps to prevent such an assault."  <u>See</u> <u>Berg</u>, 794

22 F.2d at 459.  Before being required to take action he must, however, have more than a

23 "mere suspicion" that an attack will occur.  <u>See</u> <u>id.</u>

24     The following facts are not in dispute unless otherwise stated.  On January 13,

25 2006, Plaintiff was informed that he and inmate Bayliss were being investigated for

26 promoting disruptive behavior, and that they were to be placed in administrative

27 segregation ("ad-seg") during the investigation.  According to Defendants, it is common-

28 place for inmates to refuse to sign cell-compatibility forms because inmates prefer a

1   private cell.  (<u>See</u> Selby Decl. at 2.)  Plaintiff refused to sign the cell-compatibility form

2   placing him with Bayliss in the same cell.  Plaintiff states in his complaint that he told

3   Defendants that he was unwilling to accept a cell-mate until he knew more about the

4   accusations against him and Bayliss.  (Compl. 7.)  Plaintiff asserts in his opposition that

5   he expressly told Defendants that he refused to be housed with Bayliss because they were

6   enemies and he was concerned for his personal safety.  (Oppo. at 5 and 9.)  Defendants

7   assert that Plaintiff only told them that he was unwilling to accept a cell-mate, not that he

8   was incompatible with Bayliss, which is consistent with Plaintiff's assertion in his

9   complaint. (Defs.' Mot. at 4.)  Plaintiff and inmate Bayliss were assigned to share cell

10  number 203 in ad-seg and were escorted there later the same day.

11          Plaintiff entered the cell first, followed by Bayliss.  Bayliss' handcuffs were the

12  first to be removed because, according to Defendants, he was the last to enter the cell.

13  (<u>Id.</u>)  Once Bayliss' handcuffs were removed, he attacked Plaintiff.  (<u>Id.</u>)  Plaintiff alleges

14  that the attack was Defendant Rodriguez' prompting to "get him."  (Compl. 4.)

15  Defendant Rodriguez states that he immediately ordered Bayliss to "prone out," *i.e.*, to lie

16  flat on the floor, but that Bayliss refused to obey and continued to attack Plaintiff.  (Defs.'

17  Mot. at 4.)  Defendant and Sergeant Peterson, who arrived shortly after Bayliss began to

18  attack Plaintiff, sprayed pepper spray at Bayliss which caused him to stop the attack.  (<u>Id.</u>)

19  Plaintiff alleges that Defendant Rodriguez sprayed Plaintiff with pepper spray even after

20  Bayliss had been subdued.  (Compl. 7.)  Bayliss submitted his hands to be handcuffed as

21  ordered.  (Defs.' Mot. at 5.)  Plaintiff and Bayliss were each escorted away to separate

22  areas for decontamination and medical examination.  (<u>Id.</u> at 5.)

23          Defendants contend that Plaintiff's failure-to-protect claim must fail because

24  Defendants did not have any knowledge about an excessive risk to Plaintiff's safety.

25  (Defs.' Mot. at 6.)  Plaintiff alleges for the first time in his opposition that he expressly

26  told Defendants that Bayliss was his enemy and that he refused to be celled with him due

27  to safety concerns.  (Oppo. at 5.)  Defendants argue that the only thing Plaintiff told them

28  on the day of the incident was that he was unwilling to accept a cell mate and that he

1   refused to sign the cell-compatibility form, which is consistent with Plaintiff's allegations

2   in his complaint.  Defendant Selby states that he reviewed the Central Files of Plaintiff

3   and Bayliss and found no indication therein that they were incompatible.  (See Selby

4   Decl. at 2.)  Plaintiff's CDC 812-C form, which lists confidential enemies, shows that

5   Bayliss was not listed as an enemy of Plaintiff at the time of the attack.  (Id., Ex. A.)  The

6   declaration of Correctional Officer E. Camarena states that he escorted Plaintiff and

7   inmate Bayliss from general population to ad-seg with Defendant Rodriguez.  (See

8   Camarena Decl. at 1-2.)  Camarena states that at no time did Plaintiff inform him or

9   anyone else that he was incompatible with Bayliss or anyone else.  (Id.)  Camarena, along

10  with Defendant Rodriguez, escorted Plaintiff and Bayliss to their cell and was present

11  throughout the entire incident that ensued.  (Id.)  Camarena states that he did not hear

12  Defendant Rodriguez ever order Bayliss to attack Plaintiff.  (Id.)

13         There is insufficient evidence to show that Defendants had the requisite mental

14  state.  The prison official must both be aware of facts from which the inference could be

15  drawn that a substantial risk of serious harm exists, and he must also draw the inference.

16  See Farmer, 511 U.S. at 837.  Plaintiff asserts that he told Defendants that Bayliss

17  presented a threat, but his allegations are refuted by Defendants as well as the testimony

18  of another witness who was present throughout Plaintiff's exchanges with Defendants.

19  Plaintiff submits an written statement by inmate Armen Yupundzhyan, who was housed

20  in the neighboring cell, number 202, in which Yupundzhyan states that he heard two

21  inmates and two officers enter the pod on the day in question, and that he heard Plaintiff

22  tell prison officials that he was "not compatible with [Bayliss]."  (Compl., Ex. A.)

23  Yupundzhyan also attests that he heard Defendant Rodriguez say "get him" after which

24  he heard a loud rumbling for a few seconds before the alarm.  (Id.)  However,

25  Yupundzhyan later contradicts his written statement by his deposition testimony, wherein

26  he states that Plaintiff did not say anything to officers prior to entering his cell and

27  wherein he makes no mention of hearing Defendant Rodriguez say "get him" as he does

28  in the affidavit.  (See Kwong Decl., Ex. A at 47.)  Plaintiff's allegation of what he told

1   Defendants about being celled with Bayliss in his opposition, *i.e.*, that Bayliss is his

2   enemy, differs materially from what he originally alleges in his complaint, *i.e.*, that he did

3   not want a cell-mate.  (See *supra* p. 5.)  "When opposing parties tell different stories, one

4   of which is blatantly contradicted by the record, so that no reasonable jury could believe

5   it, a court should not adopt that version of the facts for purposes of ruling on a motion for

6   summary judgment."  Scott v. Harris, 127 S. Ct. 1769, 1776-77 (2007) (police officer

7   entitled to summary judgment based on qualified immunity in light of video evidence

8   capturing plaintiff's reckless driving in attempting to evade capture which utterly

9   discredits plaintiff's claim that there was little or no actual threat to innocent bystanders).

10  Even assuming that Defendants knew that Plaintiff and Bayliss were members of rival

11  gangs, this information alone is not sufficient to raise the inference that putting them in

12  the same cell would create a substantial risk of serious harm, particularly when their

13  Central Files do not indicate enemy concerns.  A prison official must have more than a

14  "mere suspicion" that an attack will occur before he is required to take action to protect

15  an inmate.  See Berg, 794 F.2d at 459.  The nonmoving party has the burden of

16  identifying with reasonable particularity the evidence that precludes summary judgment.

17  Id.  If the nonmoving party fails to do so, the district court may properly grant summary

18  judgment in favor of the moving party.  See id.; see, e.g., Carmen v. San Francisco

19  Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).  Plaintiff has failed do

20  so.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth

21  Amendment failure-to-protect claim.

22          **2.      Eighth Amendment - Excessive Force**

23          The treatment a prisoner receives in prison and the conditions under which he is

24  confined are subject to scrutiny under the Eighth Amendment.  Helling v. McKinney, 509

25  U.S. 25, 31 (1993).  "After incarceration, only the unnecessary and wanton infliction of

26  pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

27  Whitley v. Albers, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and

28  citation omitted).  What is required to establish an unnecessary and wanton infliction of

1   pain varies according to the nature of the alleged constitutional violation.  <u>Whitley v.</u>

2   <u>Albers</u>, 475 U.S. 312, 320 (1986).  When prison officials stand accused of using

3   excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether

4   force was applied in a good-faith effort to maintain or restore discipline, or maliciously

5   and sadistically to cause harm.  <u>Id.</u> at 6-7; <u>Whitley</u>, 475 U.S. at 320-21; <u>Jeffers v. Gomez</u>,

6   267 F.3d 895, 912-13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim

7   that prison guards used excessive force when attempting to quell a prison riot, but

8   applying "deliberate indifference" standard to claim that guards failed to act on rumors of

9   violence to prevent the riot).

10          In determining whether the use of force was for the purpose of maintaining or

11   restoring discipline, or for the malicious and sadistic purpose of causing harm, a court

12   may evaluate the need for application of force, the relationship between that need and the

13   amount of force used, the extent of any injury inflicted, the threat reasonably perceived by

14   the responsible officials, and any efforts made to temper the severity of a forceful

15   response.  <u>Hudson</u>, 503 U.S. at 7; <u>LeMaire</u>, 12 F.3d at 1454; <u>see also</u> <u>Spain v. Procunier</u>,

16   600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in

17   each situation); <u>see, e.g.</u>, <u>Watts v. McKinney</u>, 394 F.3d 710, 712-13 (9th Cir. 2005)

18   (finding that kicking the genitals of a prisoner who was on the ground and in handcuffs

19   during an interrogation was "near the top of the list" of acts taken with cruel and sadistic

20   purpose to harm another); <u>Clement v. Gomez</u>, 298 F.3d 898, 904 (9th Cir. 2002) (pepper-

21   spraying fighting inmates a second time after hearing coughing and gagging from prior

22   spray was not malicious and sadistic for purpose of causing harm, where initial shot of

23   spray had been blocked by inmates' bodies).

24          While the extent of injury suffered by an inmate is one of the factors to be

25   considered in determining whether the use of force is wanton and unnecessary, the

26   absence of serious injury does not end the Eighth Amendment inquiry.  <u>Hudson</u>, 503 U.S.

27   at 7.  Although the Ninth Circuit has not addressed the issue, it has strongly suggested

28   that a prisoner need only prove that the use of physical <u>force</u> was more than de minimis.

1   See Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (clarifying that in embracing

2   physical injury standard under 28 U.S.C. § 1997e(e) adopted by several circuits, Ninth

3   Circuit does not subscribe to reasoning of some of those circuits that 8th Amendment

4   claims require that "the injury must be more than de minimis;" standard used for 8th

5   Amendment excessive force claims only examines whether the use of physical force is

6   more than de minimis).

7           Plaintiff alleges that Defendant Rodriguez "maliciously and sadistically" sprayed

8   Plaintiff with an entire can of pepper spray directly in the face and upper body.  (Compl.

9   at 7.)  Plaintiff claims that he exited the cell when Defendant Rodriguez ordered him to

10  do so, and that Defendant Rodriguez then "maliciously and sadistically" slammed him

11  into a wall and dragged him down a flight of stairs.  (Id.)  Plaintiff claims that he suffered

12  inflammation, shortness of breath and temporary blindness due to the excessive use of

13  pepper spray.  (Id. at 8.)  Having reviewed the pleadings and all submitted papers on this

14  matter, the Court finds that Plaintiff has failed to meet his burden of identifying with

15  reasonable particularity evidence showing that there is a genuine issue for trial.  See

16  Celotex Corp., 477 U.S. at 324.  As discussed above, Plaintiff submits a single page

17  affidavit by inmate Yupundzhyan, who was housed in the neighboring cell 202, who

18  attests to being a witness to the events that transpired on January 13, 2006.  (Compl., Ex.

19  A.)  There appear to be several inconsistencies between Yupundzhyan's statement and his

20  deposition testimony: (1) in the affidavit Yupundzhyan stated that he heard Plaintiff tell

21  prison officials that he was "not compatible with [Bayliss]," (id.), while in his deposition

22  he testified that he did not hear Plaintiff say anything, (see Kwong Decl., Ex. A at 47); (2)

23  while Yupundzhyan wrote in his statement that Plaintiff was pushed into the cell by

24  Defendant Rodriguez, his deposition states that Plaintiff walked in, (id.); (3)

25  Yupundzhyan wrote that he heard Defendant Rodriguez say "get him" but he omitted this

26  key fact at his deposition when asked what happened after Bayliss' handcuffs were

27  removed, (id. at 48-49); and (4) Yupundzhyan wrote in his statement that he saw

28  Defendant Rodriguez "slam [Plaintiff] and drag him away" but makes no mention of

1    Defendant's violent actions in his deposition, (id. at 54).  At best, Yupundzhyan's

2    testimony is merely colorable rather than significantly probative and is not enough to

3    overcome summary judgment.  See Liberty Lobby, 477 U.S. at 249-50.  Furthermore,

4    Plaintiff's allegations are contradicted by several witnesses who state that they never saw

5    Defendant Rodriguez use the excessive force alleged by Plaintiff.  (See Camarene Decl.;

6    Petersen Decl.; and Fajardo Decl); see Scott, 127 S. Ct. at 1776-77.

7          Lastly, the type of harm which Plaintiff alleges he suffered is contradicted by his

8    medical records.  Specifically, the medical evaluation of Plaintiff a few minutes after the

9    attack document that Plaintiff had no physical injuries, i.e., lacerations, scratches,

10   abrasions, bruises or swelling.  (See Lee Decl. at 2.)  Yupundzhyan's testimony also

11   states that he observed Plaintiff had a "couple of scratches on his back and chest" with no

12   bleeding, but does not identify whether the injuries were inflicted by Bayliss or by

13   Defendant Rodriguez.  (Compl., Ex. A.)  Nevertheless, the couple of scratches, if indeed

14   inflicted by Defendant Rodriguez, are insufficient to show that the use of physical force

15   was more than de minimis.  See Oliver, 289 F.3d at 628.  Furthermore, several of

16   Plaintiff's "Health Care Services Request Form" submitted in January and February 2006

17   complaint of frequent headaches as a result of an assault by an inmate, but are silent with

18   respect to an assault by correctional officers or being dragged down a flight of stairs.

19   (Kwong Decl., Ex. B.)  The first mention of an assault by an officer is on a form dated

20   January 4, 2007, almost a year after the incident.  (Id.)  Therefore, Plaintiff's Eighth

21   Amendment argument fails as a matter of law because Plaintiff has presented insufficient

22   evidence to establish that Defendant Rodriguez deliberately sprayed him with pepper

23   spray, slammed him against a wall or dragged him down a flight of stairs.  Accordingly,

24   summary judgment is GRANTED to Defendant Rodriguez on Plaintiff's Eighth

25   Amendment excessive force claim.[1]

26   ///

27

28          [1]  Because the Court finds that no constitutional violation occurred, it is not
     necessary to reach Defendants' qualified immunity argument.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 33) is GRANTED.

This order terminates Docket No. 33.

IT IS SO ORDERED.

DATED: ___3/18/09_____

_____
JEREMY FOGEL
United States District Judge